## SELLERS v. SPILLER.
### No. 7871.

Court of Civil Appeals of Texas. Austin.
Oct. 18, 1933.

Rehearing Denied Nov. 15, 1933.

Sam McCollum, of Brady, and Frank Hartgraves, of Menard, for appellant.

I. J. Burns, of Brady, and Critz & Woodward, of Coleman, for appellee.

BAUGH, Justice.

Sellers sued Spiller for breach of contract, dated January 6, 1931, for the exchange of properties, and, among other things, for rents claimed to be due him by Spiller under said contract. The contract provided, in addition to the exchange of lands, that Spiller was to pay off certain described indebtedness against a lot in Brady, Tex., which Spiller conveyed to Sellers; and that Spiller was to have a lease on said property. The contract was drawn in part by the agent who acted for both parties, but before execution thereof, Spiller added some further provisions to it in his own handwriting. The provision here in controversy, not written by Spiller, and which Sellers claims was breached by Spiller, reads as follows: "If this deal is closed, the above warehouse building is to be delivered to Sellers on April 1st, 1931, and it is understood that there is now an indebtedness against said building, which is due and payable at the rate of $30.00 per month, and Spiller obligates himself to make all of these monthly payments as they mature, until said indebtedness is fully satisfied, and in addition to making said monthly payments, beginning on April 1st, 1931, the said Spiller is to have a lease on said building from said Sellers, and is to pay the said Sellers $50.00 per month lease, which $50.00 payment is to be in addition to the $30.00 payment on said indebtedness."

The amount of the indebtedness against said property amounted to $800, requiring a period of 26⅔ months to pay it off at $30 per month. Spiller occupied the building after April 1st, and paid to Sellers, in addition to the $30 per month paid to the holders of the indebtedness, $50 per month rental until October 31, 1931, at which time, after notice to Sellers, he vacated the property. It is Sellers' contention, among others, that said contract bound Spiller to keep the premises for the 26⅔ months required to pay off the indebtedness against it, and to pay him $50 per month rental for that period.

The case was tried to a jury, but at the close of the evidence the court instructed a verdict for the defendant; hence this appeal.

■ Appellant's first proposition is that the court erred in taking from the jury the question of Spiller's authorship of the contract; it being contended that if appellee was the author of the contract and used his own language, if that language were ambiguous, it should be strictly construed against him. This proposition is not sustained. The facts were not disputed. The agent of both parties wrote most of the contract, but before it was signed Spiller added some further provisions in his own handwriting. As to the portion written by Spiller, if ambiguous, or if sought to be taken advantage of by Spiller, appellant's contention might be sustained. But no complaint is made of, and no cause of action based upon, the part written by Spiller. That portion of the contract was carried out. The portion above quoted and here complained of was written by the mutual agent representing both parties, and was as much the contract of Sellers as of Spiller. The mere fact that Spiller added to the contract submitted to him and agreed to by Sellers other provisions would not make him the author of the entire contract, part of which he did not draw, and thus subject all of the provisions of such contract to a strict construction against him. At most, only the portion of which he was in fact the author could be strictly construed against him and that portion is not here called in question.

■■ Appellant's next contention complains that the trial court must necessarily have placed an erroneous construction on the quoted portion of the contract in his instructed verdict. We do not think so. The portion of the contract in question contained two provisions. One bound Spiller to pay off the indebtedness against the warehouse at the rate of $30 per month. The amount of that indebtedness is not named in the contract, but was shown to have been $800, and was held by third parties. It was not assumed by Sellers and he was not in any manner obligated to pay it. The other provision bound Sellers to lease the building to Spiller at a rental of $50 per month. While embodied in the same paragraph, the undertakings were clearly distinct and separate. Payment of the debt against the property was for the benefit of Sellers. Retaining the use of the premises was shown by the oral testimony to have been largely for the convenience and benefit of Spiller who was then conducting his business

therein. It was but a written contract to lease the premises at a specified monthly rental. At most, it was but ambiguous as to time—none being specified. As such, evidence was admissible to show what was the intention of the parties, and what was their agreement. All witnesses testified that no definite term of rental was mentioned by either party. That being true, the contract amounts to merely an agreement to lease at a specified monthly rental for an indefinite time. Such contracts have uniformly been held to be merely tenancies from month to month, subject to termination by either party upon reasonable notice to the other. Lea v. Hernandez, 10 Tex. 137; Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275; Patterson v. Ellis (Tex. Civ. App.) 149 S. W. 300; Willis v. Thomas (Tex. Civ. App.) 9 S.W.(2d) 423; 16 R. C. L. 612; 12 C. J. 1106, 1123; 27 Tex. Jur. 54.

■ The next question raised by appellant relates to the sufficiency of the notice to Sellers that Spiller intended to vacate the property at the end of October, both as to the form and contents of such notice, and as to the time stated. This notice was in writing, dated at Brady, Tex., October 28, 1931, addressed to Sellers at Menard, Tex., signed by Spiller Grain Company, and advised appellant that "we will not want to rent your house here in Brady * * * after the first day of November, 1931. We are moving, and will have vacated the premises, and have all of our stuff out of your building, and ready to turn back to you, by the 31 day of October, 1931." Spiller Grain Company was a partnership. The building was leased by Spiller individually and used by the partnership. The irregularity of the notice in this respect, however, was clearly waived by Sellers in treating it as a notice from Spiller and demanding rent from him. However, it appears that such notice was not given within a reasonable time of the date on which Spiller sought to terminate his tenancy. In contracts from month to month, a month's notice in advance of intention to vacate, where time of notice is not prescribed by statute nor by the terms of the contract, has been held to be a reasonable time. McKibbin v. Pierce (Tex. Civ. App.) 190 S. W. 1149; 16 R. C. L. 1174; 35 C. J. 1116; Pack v. Feuchtenberger, 232 Ky. 267, 22 S.W.(2d) 914, 915. This was the common-law rule and has been followed by the courts of this country. Not having given sufficient notice, Spiller became a hold-over tenant for the month of November under the terms of the original lease. City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763; Abeel v. McDonnell, 39 Tex. Civ. App. 453, 87 S. W. 1066; Johnson v. Hulett, 56 Tex. Civ. App. 11, 120 S. W. 257, 259; 3 A. L. R. 1092; Scheuer & Tiegs

v. Benedict, 173 Wis. 241, 181 N. W. 129, 12 A. L. R. 1166.

■■ Appellant next contends that appellee never surrendered possession of the premises to him for the reason that he locked the building when he moved out of it; that same has remained locked ever since; and that he has never tendered appellant the keys to the building. Ordinarily, in the absence of physical or actual possession taken by the landlord, possession of the premises is evidenced by a surrender to him of the keys by the tenant. Spiller testified that he did not have any keys to the premises. It is difficult to conceive, however, how he could have operated his business therein, or how he could have locked the building when vacating same, without keys to the building. This, we think, however, is immaterial in view of the undisputed testimony. A tenant's surrender of the premises, after proper notice of termination of his lease has been given, is usually accomplished by vacating same. In the instant case Sellers is in no position to complain of Spiller's failure to deliver to him the keys, for the reason that he refused to receive possession of the premises on the ground that Spiller's lease had not expired. The necessary inference is that Sellers would have refused possession if properly tendered by Spiller, and that a tender of the keys would have been a useless act. The Maccabees v. Marshall (Tex. Civ. App.) 11 S.W.(2d) 523; Norton v. White (Tex. Civ. App.) 16 S.W.(2d) 553; 62 C. J. 658. Under such circumstances a tender of the keys was unnecessary.

The remaining contentions of appellant urge that even if judgment ran in favor of appellee, costs should have been taxed against him because his compliance with other provisions of his contract was not had until after suit was filed, and even during the trial; and that if suit were necessary to effect such compliance by Spiller the costs should have been taxed against him. In view of what we have already said, it becomes unnecessary to discuss this question.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee in his motion for rehearing urges that his counter proposition should have been sustained to the effect that because the amended pleading of the plaintiff below, after the exceptions thereto had been sustained, showed an amount in controversy below the jurisdiction of the district court, citing numerous authorities.

■ This contention is not sustained. There is no charge that the original action was not brought in good faith; nor that any false al-

legations were made for the fraudulent purpose of securing jurisdiction of the district court over the controversy. It is now well settled that the allegations of the original petition determine the jurisdiction of the court. The mere fact that by amendment these allegations may be varied, or the amount reduced below the jurisdiction of the district court, does not deprive that court of jurisdiction which had already properly attached. Nashville, Chattanooga & St. L. R. Co. v. Grayson County Nat. Bank, 100 Tex. 17, 93 S. W. 431; Isbell v. Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S. W. 762; City of Ft. Worth v. Zanecetti (Tex. Com. App.) 29 S.W.(2d) 958.

Not only did the original petition allege damages within the jurisdiction of the district court, but that petition, as well as the amended petition, sought foreclosure of an equitable lien on lands in San Saba county asserted by the plaintiff because of the alleged breach of said contract, which was for the exchange of lands between the plaintiff and the defendant. The fact that the plaintiff could not show the existence of such lien upon the trial did not defeat the jurisdiction of the court which obtained by reason of such allegations. Ablowich v. Greenville Nat. Bank, 95 Tex. 429, 67 S. W. 79, 881; Southwest Investment Co. v. Terry (Tex. Civ. App.) 42 S.W.(2d) 1051.

In view of these cases, and the allegations of the original petition, and in the absence of any charge that such allegations were made for the fraudulent purpose of obtaining jurisdiction in the district court, appellee's motion for rehearing is overruled.

Overruled.